IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF BELLA C.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF BELLA C., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BRANDY T., APPELLANT.

Filed June 2, 2026.    No. A-25-324.

Appeal from the Separate Juvenile Court of Sarpy County: SARAH M. MOORE, Judge. Affirmed.

Jamie E. Kinkaid, of Spectre Law, L.L.C., and Lillianne E. McClellan, Senior Certified Law Student, for appellant.

Brianna L. McLarty, Deputy Sarpy County Attorney, for appellee.

MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

Brandy T. appeals the order of the separate juvenile court of Sarpy County terminating her parental rights to her minor daughter. Upon our de novo review, we affirm the juvenile court's order.

## BACKGROUND

Brandy is the mother of Bella C., born in April 2019.

On October 5, 2022, the State filed a petition that alleged Bella was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The petition alleged that Brandy had (1) allowed the minor child to be sexually abused; (2) exposed the minor child to controlled

- 1 -

substances and/or substance usage; (3) failed to maintain adequate housing or to provide the minor child with such; (4) failed to provide the minor child with proper care, supervision, and/or support, ensuring the child's safety; and (5) overall, that the minor child was at risk of harm. On the same day the court issued an ex parte order placing the minor child in the temporary care and custody of the Department of Health and Human Services (DHHS).

On May 8, 2023, Brandy entered an admission to the juvenile petition on counts (3), (4), and (5). The State moved to dismiss counts (1) and (2), and the court granted the motion. The court adjudicated Bella under § 43-247(3)(a). The court proceeded to an immediate disposition, and by stipulation of all the parties, Brandy was ordered to complete an updated co-occurring evaluation with collateral information to be provided by DHHS, submit to random and frequent urine drug tests, complete the "ABCs of Sexual Abuse Parenting Class," participate with family support services, sign all releases, and participate in supervised parenting time.

In June 2023, after a continued disposition hearing, the juvenile court reincorporated its prior order and added further requirements, including that Brandy begin family therapy once approved by Bella's therapist and that Brandy's boyfriend, Kevin C., was not allowed to have direct or indirect contact with Bella. Following this order, the court held multiple review and permanency planning hearings throughout 2023 and 2024.

In May 2023, Bella experienced night terrors, frequent bedwetting, increased clinging to foster providers, shaking, and outbursts of sobbing. Because of these behaviors, Bella's therapist recommended that Brandy's visitations be decreased or suspended. In August 2023, Bella was attending individual therapy, and it was determined that Bella was not ready for family therapy.

On August 9, 2023, the Child and Family Services (CFS) specialist reported that DHHS expressed concerns that overall, there had been poor progress toward the permanency objective of reunification. DHHS was concerned that Brandy had minimized her substance abuse issues, lied to case professionals when confronted with positive tests, and was still dating Kevin, who allegedly sexually abused Bella. The CFS specialist also reported that Bella disclosed she was being coached by her current placement, Alise B., into saying that Brandy and Kevin were "monsters."

CFS reported that Brandy tested positive for controlled substances (codeine, fentanyl, marijuana, and morphine) at her random drug tests. Brandy tested positive for fentanyl on May 17, 2023. On May 23, Brandy tested positive for methadone; however, Brandy was prescribed methadone by the "BART clinic" as a part of her addiction treatment. On May 25, Brandy tested positive for marijuana. On May 31, Brandy tested positive for marijuana and fentanyl. On July 11, Brandy tested positive for morphine. CFS reported that Brandy was dishonest with her case team about her drug use, claiming that "the only possible way I could have gotten fentanyl in my system was when I was moving some old stuff," but later admitting to a psychologist that she was injecting herself with fentanyl. When Brandy tested positive for codeine, she claimed the positive test result was from eating a chicken salad that contained poppy seeds.

On August 16, 2023, the court held a review and permanency planning hearing, and following this hearing, the court found that Brandy's illegal substance use and relationship with Kevin continued to be a barrier to reunification. The court also expressed concerns about Bella's current placement. On August 24, DHHS filed an ex parte motion for an emergency change of placement. The CFS specialist alleged that Bella's placement was a barrier to reunification. The specialist alleged that Alise refused to send Bella to supervised visitation, coached Bella on how

to conduct herself in therapy, and was present throughout Bella's therapy sessions. The court granted the ex parte motion for an emergency change of placement and moved Bella to a different kinship home with Miranda C., Bella's older sister.

The court held a review and permanency planning hearing on September 28, 2023. The court adopted DHHS' recommendations and found that DHHS had made reasonable efforts toward reunification. The court set the next hearing for November 30.

In November 2023, the CFS specialist reported that DHHS was concerned that Bella's placement with Miranda was unable to meet Bella's emotional needs. DHHS became aware that on September 28, Brandy sent Miranda documentation from the case's parties, including a report that outlined concerns with Miranda as a placement for Bella. As a result, Miranda reached out to Bella's court appointed special advocate worker, and stated, "[I] will no longer tell you guys what is happening" and "[I] don't trust you guys now."

The report listed that since September 2023, Bella's therapist, Olivia Christensen, expressed concerns about Brandy. Christensen reported to DHHS that Brandy was invasive of Bella's boundaries, that Bella acted out toward Brandy, and was emotionally distressed when interacting with Brandy. Visitation workers reported that when Bella had an outburst, Brandy would do nothing or walk away. The CFS specialist was concerned that after a 6-hour visit with Brandy, Bella needed to be hospitalized for dehydration. The CFS worker also expressed concern that Brandy complained about having to "keep Bella busy for six hours" every Friday.

Lastly, DHHS reported that, since September 2023, Brandy's counsel had become a "barrier towards case progression of reunification with Bella." Brandy's counsel made continuous threats to subpoena agencies and individuals, threatened to record meetings, and threatened to "go public" and discuss the case with the news and the media.

After a review and permanency planning hearing in November 2023, the court found that it was in Bella's best interests to remove her from Miranda's home and place her in an agency-based, trauma-informed placement within the Omaha area, as the placement with Miranda posed a safety risk to Bella's mental health. The court also adopted the case plan but changed the permanency objective to reunification with a concurrent plan of adoption.

Following the order, Brandy moved for an ex parte order for DHHS to appear and show cause, alleging that it willfully violated the terms and conditions of the court's order. Brandy alleged that DHHS was knowingly and willfully disobeying the court's orders by attempting to improperly delegate the matter of "the mother's visitation to third persons." Brandy alleged in her affidavit that she "had visits canceled since the last hearing, not due to any fault of [her] own." Bella's guardian ad litem (GAL) filed an ex parte motion to restrict visitation between Brandy and Bella to therapeutic visitation until further order by the court. The court granted the GAL's ex parte motion for therapeutic visitation.

Brandy filed a motion to vacate the ex parte order for therapeutic visitation. Following this motion, the court held a hearing and ordered that supervised agency visits were suspended until recommended by Bella's therapist.

On June 7, 2024, the State filed a motion to terminate Brandy's parental rights. The motion alleged that Brandy had substantially and continuously, or repeatedly, neglected and refused to provide Bella with the necessary parental care and protection. See Neb. Rev. Stat. § 43-292(2) (Reissue 2016). The motion also alleged that Brandy was unfit by reason of debauchery, habitual

use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile. See § 43-292(4). The motion alleged that despite reasonable efforts to preserve and reunify the family, Brandy failed to utilize DHHS to remediate the reason for removal, failed to meet Bella's developmental and emotional needs, and was unable to independently and fully obtain sobriety. See § 43-292(6). The motion further alleged that Bella had been in an out-of-home placement for 15 or more months of the most recent 22 months and that it would be in Bella's best interests to terminate parental rights. See § 43-292(7). Brandy entered a plea of denial to the allegations of the motion, which was accepted by the court.

The hearing on the motion to terminate occurred on multiple days and the court heard the testimony of numerous witnesses.

Christensen, Bella's therapist, testified that she diagnosed Bella with unspecified trauma and stressor related disorder. Christensen stated that there were concerns with Bella's safety as she had sexualized behaviors and problems regulating her emotions. Christensen also said that the only sexualized behavior shared with her to be addressed in therapy was that Brandy's boyfriend had sexually abused Bella. Christensen stated that Bella told her in therapy that she communicated to Brandy that someone touched her "private parts" and pointed to her vaginal area. Christensen testified that Bella exhibited major aggression during her last therapeutic visit with Brandy. Christensen said that Bella continually expressed in therapy that she told Brandy that she did not want to live with her.

Sarah Sacco-Rohde, a CFS specialist and case worker, testified that when she took over Bella's case there were concerns Brandy was still in contact with Kevin. Sacco-Rohde said that Brandy did not provide her with verification of employment, and it was unknown to her whether Brandy was employed. Sacco-Rohde also testified that Brandy continued to not meet Bella's emotional needs and that Brandy could have done more to acknowledge Bella's trauma.

Sacco-Rohde acknowledged that there were four separate providers working with Bella in a therapeutic setting that have recommended no contact between Bella and Brandy outside of a therapeutic setting. Sacco-Rohde said that Brandy and Bella did not have an established relationship and that Brandy had several opportunities since the case opened to build that relationship. Sacco-Rohde recommended that the court should grant the termination of parental rights, based on the 2½ years of Bella's behaviors and trauma, that therapy was still needed, and because Bella deserved permanency and had trauma to work through.

Brayden Miller, a CFS specialist and case worker, testified that Kevin remained an issue when he had the case from December 2023 to February 2024. Miller said there were concerns that Brandy was residing with Kevin and that Brandy's vehicle was registered to Kevin's address in September 2023. Miller also stated that, while drug relapses are normal, relapses require accountability to move forward and that Brandy did not take accountability.

Jordan Graham, an independent mental health practitioner who utilizes parent child interaction therapy and child parenting psychotherapy (CPP), testified that there was no timeline for a child in trauma therapy and that Bella told him, "no, stop talking," and avoided therapy at the mention of CPP. Graham concluded that the mention of CPP with Brandy was an emotional trigger, as Bella would become emotionally dysregulated to the point where she could not calm down even in the presence of an individual that she cared for or felt safe with. Graham agreed that

Bella's PTSD diagnosis was accurate and that a child with PTSD would be triggered by things that relate to the traumatic event. Graham testified that if the relationship with Bella and Brandy had not been repaired, then it would not be in Bella's best interests to return to Brandy's care at that time.

Carlee Heck, a therapist, testified that Bella ran from, hid from, crossed her arms, and turned away from Brandy in CPP sessions. Heck said that when Kevin was brought up, Bella would become dysregulated. Heck stated that sometime between May and July 2024, Bella observed Brandy wearing a ring that Bella believed was from Kevin and confronted Brandy. Heck testified that while there was some progress in CPP, Bella and Brandy could not move forward, because there was a lack of progress in Bella's individual therapy.

Joe Bailey, a detective for the Bellevue Police Department, testified to arranging and observing a forensic interview for Bella, and that Bella's statements in the forensic interview corroborated the child abuse and neglect intake. Bailey concluded from Bella's statements in the forensic interview that Bella needed to be removed from Brandy's care.

Anna Thomas, a licensed alcohol and drug counselor with the "Baart" Program West, testified to working with Brandy since March 2023. Thomas stated that she could recall only one time that Brandy tested positive for opiates in December 2023, but that Brandy denied using drugs at that time. Thomas testified that it would be concerning that Brandy was participating in a methadone program and did not disclose positive drug tests for something other than methadone. Thomas also said that methadone was a maintenance drug and that an individual who stopped receiving methadone treatment would more than likely relapse, go back to using, and suffer from withdrawal symptoms.

Dawn Schroeder, an outpatient therapist, testified that she was able to observe Bella and Brandy through activities in CPP. Schroeder stated her initial assessment was that Bella was not trusting of Brandy and that Bella did not have a bond with Brandy. Schroeder said that initially Bella would not allow Brandy to touch her and did not want to hug, kiss, or be close to Brandy. Schroeder said that while Brandy and Bella had been progressing, she would not recommend reunification, as Bella's trauma had not been addressed.

Lindsay Denker, a psychologist who evaluated Brandy, testified that Brandy disclosed to her that she used fentanyl in May 2023. Denker also testified that at the time of her evaluation, Brandy was residing with Kevin and his parents. Denker stated that there were concerns about domestic violence between Brandy and Kevin. Denker testified that relapses in drug use should not be ignored and that relapses reflected whether treatment was working and coping skills were being developed. Denker also said that it would be important for an individual to share information about the relapse to all providers to improve treatment.

Morgan Obermiller, a child and family specialist supervisor, had been supervising Bella's case since March 2023. She testified that Brandy did not meet Bella's needs or understand Bella's trauma. Obermiller stated that there were concerns with Brandy's substance use and lack of accountability. Obermiller testified that Brandy tested positive for fentanyl in May 2023, but that she did not own up to it. Obermiller stated that Brandy disclosed to Denker that she did use fentanyl through an IV.

Obermiller was also concerned that Bella would experience more trauma if placed in Brandy's care. Obermiller said there were also concerns that Brandy was still in a relationship with

Kevin, who allegedly abused Bella. Obermiller testified that Brandy did not substantially comply with her court orders. Obermiller stated that even though Brandy completed services, those services did not always lead to safety or reunification. Obermiller said DHHS seeks behavioral change with a parent, and that often it is more than checking off certain services.

Following several hearings and additional testimony, the court issued an order terminating Brandy's parental rights. The court found that Bella, is within the meaning of § 43-292(2), (6) and (7) by clear and convincing evidence insofar as Brandy was concerned and the termination of her parental rights was in the best interests of the child.

Brandy appeals.

ASSIGNMENTS OF ERROR

Brandy assigns that the juvenile court erred in (1) concluding that reasonable efforts were offered or made to correct the conditions that led to Bella's removal and Brandy failed to correct said conditions, (2) determining that Brandy was unfit and that it was in the best interests of Bella to terminate Brandy's parental rights primarily because Bella has been in out-of-home care for 15 months or more of the most recent 22 months, and (3) finding that it was in Bella's best interests to terminate Brandy's parental rights.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court. *In re Interest of Denzel D.*, 314 Neb. 631, 992 N.W.2d 471 (2023). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

*Statutory Grounds for Termination.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

Brandy argues that the juvenile court erred in finding that the State proved statutory grounds existed to terminate under § 43-292(6) and (7). We first address whether § 43-292(7) has been met.

Subsection (7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Becka P. et al., supra.* In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests' step of the analysis. *In re Interest of Becka P. et al., supra.*

Bella was removed from the home in the present case on October 5, 2022. Since the day she was removed, she has never returned to Brandy's care and has remained in out-of-home placements. At the time the State filed the motion for termination of parental rights on June 7,

2024, Bella had been placed outside the home for 20 continuous months. Therefore, Bella has been out of the home for more than 15 of the most recent 22 months; the statutory requirement for termination under § 43-292(7) has been met.

As mentioned previously, Brandy also assigns that the court erred in concluding that reasonable efforts were offered or made to correct the conditions that led to Bella's removal and Brandy failed to correct said conditions. See § 43-292(6). However, if an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. See *In re Interest of Becka P. et al., supra.* Since we find that the State presented clear and convincing evidence that a statutory ground to terminate existed under § 43-292(7), we need not address the other statutory grounds.

*Best Interests.*

Brandy's next two assignments of error allege that the juvenile court erred in finding that she was unfit and that terminating her parental rights was in Bella's best interests. Under § 43-292, in addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.*

In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts. *Id.*

Based on the record before us, Bella was removed from Brandy's care because of allegations of sexual abuse, substance abuse, homelessness, lack of proper care, and risk of harm. Despite reasonable efforts to preserve and unify the family, Brandy failed to utilize DHHS to remediate the reasons for removal; has failed to meet the developmental and emotional needs of Bella; and has been unable to independently and fully obtain sobriety, requiring the assistance of methadone to abstain from illegal substances. Brandy also failed to make meaningful therapeutic progress to include demonstrating an understanding of why Bella is in care, despite attending court ordered individual therapy and through CPP, designed to improve the relationship between Brandy and Bella.

It was apparent to the juvenile court, that the relationship between Brandy and Bella caused Bella considerable stress and emotional dysregulation. Further, their relationship has not progressed in meaningful ways, visitations remained fully supervised in a therapeutic setting for a couple hours a week, and there was no recommendation for reunification in the near future.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Cameron L. & David L.*, 32 Neb. App. 578, 3 N.W.3d 376 (2024). Further, Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id*. Brandy has failed to put herself in a position to properly parent her child. It does not appear Brandy will become a fit and capable parent any time soon. Bella deserves stability and security in her life. She should not be suspended in foster care when her mother is unable to rehabilitate herself. Accordingly, based on our review of the evidence, we agree with the juvenile court that Brandy was unfit and that terminating her parental rights was in Bella's best interests.

## CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds to terminate Brandy's parental rights to Bella existed under § 43-292(7) and that terminating her parental rights was in Bella's best interests. The juvenile court's order is affirmed.

AFFIRMED.